ROBERT M. FLEMING, Judge Pro Tem.
Hero Lands Company, et al own a tract of land of approximately 55.5 acres known as the West New Orleans Subdivision, which is contiguous to a tract of land owned by the Alsue Corporation. The boundary line between the two tracts is also the boundary line between Orleans Parish and Plaquemines Parish.
Hero, in its petition and amended petition, alleged that in March, 1970, the defendant, Texaco, secured an agreement from Alsue under which they acquired a servitude thirty feet wide on their land; and that in late July, 1970, acting under this agreement, Texaco completed and put into operation a 24 inch high-pressure gas line adjacent to and within fifteen feet of the plaintiff’s property, for a distance of 1,870 feet. They alleged that Texaco, by not keeping its high-pressure gas line at least 250 feet from the boundary of Hero’s property, created and maintained a continous dangerous nuisance to said property, because of the inherent hazards and dangers of such installations, now well know to the public, including those purchasing land for residential or business purposes. They allege that such hazards and dangers became public knowledge as a result of a decision in the case of Michigan-Wisconsin Pipeline Company v. Bonin, 217 So.2d 741 (La.App. 3rd 1969), which indicated damage to abutting lands for a distance of 250 feet on each side of such a pipeline, resulting in loss of market value and damages to said abutting land; the various newspaper articles concerning explosions of pipelines; and the opinion of real estate appraisers who ascribe harm and damage to land abutting the pipeline servitudes. Hero alleges that these hazards were purposely created by Texaco with respect to plaintiff’s land in order to save the expense to Texaco which would have been incurred if Texaco had kept said pipeline a distance of at least 250 feet from the boundary of plaintiff’s land; that Texaco chose the location for its pipeline to avoid paying the landowner, subject to the servitude, the full price which Texaco would have had to pay if it had placed the pipeline at least 250 feet away from petitioner’s land. They allege that the placing of this pipeline fifteen feet away from their land has caused them damage and depreciation in market value of plaintiff’s land of at least $30,000, and they ask for judgment in that amount.
Texaco filed various exceptions but for the purposes of this appeal we can only consider that of no cause of action. An exception of vagueness was first considered in the trial court and its purpose was to require the plaintiff to define the issues existing in the suit and to show that the actions against the defendant were not based on negligence or fault. The petition was amended and thereafter the District Court maintained an exception of no cause of action, dismissing the plaintiff’s suit.
As we understand the pleadings and the argument of counsel, Hero does not desire to allege nor does it intend to show any facts that are not now set forth in their petitions. The issues presented for decision are clear cut. ^
We are called upon, basically, to determine whether the petition of the plaintiff *347 and the amended petition of the plaintiff states a cause of action against Texaco.
From a reading of the petitions it is clear that Hero has not alleged a cause of action under Article 2315 of our Civil Code. Article 2315 states that:
“Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it; * * * ”
In order for an action to lie under this Article there must be either fault or negligence on the part of the defendant. Hero did not allege in their petition that Texaco failed to properly construct their pipeline or that Texaco physically invaded Hero’s property in the construction of the pipeline or facts that would show that Texaco has created a nuisance by the construction of the pipeline. They have simply alleged that Texaco has constructed this pipeline under a grant of authority from the landowner and that their property has been depreciated by virtue of the pipeline. They have not alleged a tort. Accordingly, the exception of no cause of action was properly .maintained under Article 2315.
We accept as a statement of fact that the construction of a high-pressure gas transmission line fifteen feet from Hero’s property has depreciated the value of their land. In 'expropriation suits the Court has frequently pointed out that there is a corridor of depreciation on either side of the pipeline and that when a pipeline is built through a person’s land damages are assessed against the pipeline company for these depreciated amounts. See Michigan-Wisconsin Pipeline Company v. Bonin, supra.
The most serious argument that is made to require compensation in favor of Hero is that Article 667 and Article 668 of the Civil Code provides for compensation without fault.
Article 667:
“Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.”
Article 668:
“Although one be not at liberty to make any work by which his neighbor’s buildings may be damaged, yet everyone has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor. Thus, he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbor’s house, because this act occasions only an inconvenience, but not a real damage.”
There are allegations that Hero’s land has depreciated in value. One question that this opinion will determine is whether this is true damages or mere inconvenience.
On the question of depreciation, we conclude that the answer is found in the application of Articles 667 and 668.
In .our view, the law of Louisiana is that the construction, maintenance and operation of a gas pipeline is not a nuis-nace per se. See Hilliard v. Shuff, 260 La. 384, 256 So.2d 127 (1971); Jeansonne v. Cox, 233 La. 251, 96 So.2d 557 (1957); Galouye v. A. P. Blossman, Inc., 32 So.2d 90 (La.App.1947).
We recognize that a gas pipeline, a fuel storage tank or any similar structure can be operated in such a manner as to constitute a nuisance but there are no allegations to this effect in the petition.
In Hilliard v. Shuff, supra, the Supreme Court made it clear that the above Code Articles controlled this type of case and that:
"The storage of basic fuels, a lawful activity, does not, without more, violate these articles. Phrased in terms of nui- *348 sanee, the storage of such fuel does not constitute a nuisance per se.”
The facts in the Hilliard case were quite different from those here. The defendant then constructed an underground tank for the storage of crude oil and placed signs prohibiting smoking within SO feet. The zone of danger extended into the Hilliard’s property. The facts showed that a substantial hazard to the adjoining property existed and severe restrictions were placed on the plaintiff’s use of his property. Here, there are no hazards or restrictions alleged, only depreciation.
In Galouye v. Blossman, supra, the Court of Appeal held that the business of storing, selling and handling liquified petroleum gas is not a nuisance per se, although such a business may be operated in such a way as to become a nuisance.
The Court did find that the operation of a butane storage and sale plant under the facts presented was carelessly done and awarded damages.
There are no allegations in the petition that Texaco has operated its pipeline in such a way as to become a nuisance.
In Jeansonne v. Cox, supra, a suit was filed in an attempt to compel the defendant to close a drainage canal. The Court found that the canal was excavated in a reasonable manner without fault or negligence and that the plaintiff failed to sustain that the activity on the adjoining property caused any damage. Since the plaintiff did not allege and prove that the canal was excavated in an unreasonable manner, or that the defendant was guilty of any negligence or fault, recovery was denied.
The Supreme Court found that the claim of the plaintiff’s for damages sustained by them as a result of the unsightliness of the canal, the deprivation of use and enjoyment of their property and the depreciation to the value of their land as a result of the canal, did not entitle the plaintiffs to a judgment. It found there were no odors or anything of like character caused by the canal, no water was carried on the plaintiff’s properties and the canal did not interfere with the full use and enjoyment of their property although there was evidence of deprivation.
In the case of Beauvais v. D. C. Hall Transport, 49 So.2d 44 (La.App.1950), a gasoline storage tank was constructed adjacent to the plaintiff’s property which certainly would have a deprecatory effect. The Court allowed it, saying:
“Plaintiffs have not sustained the allegation that the presence of the gasoline tanks on defendant’s premises constituted a dangerous situation so far as they are concerned. The record showed that the underground tanks were installed by the Standard Oil Company in the most approved modern manner and method and that the danger of explosion or damage to plaintiff’s premises, in this way, was remote if not nonexistent.”
Our sister states indicate that there should be no compensation for depreciation. In 61 Am.Jur.2nd. verbo pipelines § 50, it is stated:
“The operation of a pipeline is not a nuisance per se, and recovery for damages resulting from the construction or operation of same becomes a question of negligence or not, depending, as in other cases of negligence, upon the inquiry whether or not there has been a neglect or violation of the duty which the law imposes upon all persons who use due care in the use of their property or the conduct of their business to avoid injury to others. But if a pipeline becomes a nuisance, the operator will be held liable for any injury resulting to another therefrom, regardless of the degree of care that he may have used.
“A pipeline for the transportation of oil is not rendered a nuisance by the mere fact that its presence enhanced the rates of insurance on property in the neighborhood, but it may become a temporary *349 abatable nuisance by reason of negligence in its maintenance, such as allowing escape of the oil from a leak in the pipe.”
A pipeline is not a nuisance per se, but' it could be a nuisance per accidens; however, there are no allegations in this case that it is.
Law school professor A. N. Yiannopou-los observes, concerning Article 667-669 that French doctrine and jurisprudence has been sparingly used in this field because the French Civil Code does not contain equivalent articles. See Froelicher v. Southern Marine Works, 118 La. 1077, 43 So. 882 (1907), wherein the Court stated that, “Our researches in French jurisprudence have not enabled us to find a pertinent decision. We infer that there are not many decisions in France upon the subject, for the reason that that particular matter is left in great part to municipal regulation, and not to private suits for damages.” He notes that modern French jurisprudence has developed rules corresponding to those established by Articles 667-669 of the Louisiana Civil Code. Under these rules, damage resulting from physical invasions of neighboring property is recoverable. See 3 Planiol Et Ripert, Traite pratique de droit civil francais 450-467 (2nd Ed. Pi-card-1952). “But installations of works which, without causing positive damage to neighbors and without thus encroaching on their rights of ownership, merely result in an exaggeration of risk, especially risk of fire to which their immovable property is subjected, or which result in a privation of advantages that the neighbors have always enjoyed, cannot sustain action for damages. Thus, constructions raised by an owner on his property which deprive the neighbors of the enjoyment of a view or simply of the light that he has enjoyed, do not confer on the neighbor the right to bring an action for damages, unless they have been intended to cause damage.” 2 Aubry Et Rau, Property 282 (7th Ed. Es-mein-1961).
The circumstances as alleged in the petition constitute an instance of damnum absque injuria, i. e., a damage without legal injury or remedy. Depreciation of land value because of lawful activities conducted by Texaco on adjoining property'is not a recoverable item, being damnum ab-sque injuria. There are no Louisiana cases which permit recovery for depreciation of land values as a result of construction, operation or maintenance of a private pipeline on neighboring property, but by analogy to other cases involving tramways, railroads and canals, it is clear that a cause of action does not exist in the absence of a physical invasion or physical damage. See Morris v. Putsman, 166 La. 14, 116 So. 577; Hill v. Chicago-St. Louis Railroad, 38 La.Ann. 599; and Jeansonne v. Cox, supra, respectively. While it is true that had Texaco expropriated a pipeline servitude from Hero they would be required to reimburse Hero for the severance damages done in its corridor of depreciation, such is not the case where a pipeline is constructed on adjoining property.
While ordinarily a suit such as this would be brought against the landowner rather than the servitude owner, Texaco is properly made the defendant — it is a “proprietor” of the servitude. In the recent case of Lombard v. Sewerage and Water Board of New Orleans, 284. So.2d 905 (1973), Justice Summers noted that, “The word ‘proprietor’ need not be limited to ‘owner’. Any person assuming the position of owner, usufructuary, possessor in good or bad faith, or lessee, may qualify as proprietor by virtue of an expansive interpretation,” and the defendant was held to be such a proprietor under Article 667, although it was not the owner. Such is the case here.
In the Lombard case, there were seventeen consolidated suits representing 119 plaintiffs who sued for residential damages caused by the construction and installation of an underground drainage canal. They suffered actual and real damages and the *350 Supreme Court entered awards m their favor even though it found there was no negligence on the part of the contractor, the Sewerage and Water Board, or the City. The Court applied Article 667 in allowing recovery. We distinguish the Lombard case from this case. The Lombard case had real damages under Article 667; this case involves and “inconvenience” under Article 668, ergo no recovery.
We hold that Hero’s property has not been damaged under Article 667 of the Civil Code, but rather that it has occasioned some inconvenience under Article 668 of the Civil Code; therefore, the exception of no cause of action was properly maintained.
The judgment of the District Court is affirmed at appellant’s cost.
Affirmed.